## PETITION: SMALL CLAIMS CASE

FILED

CASE NO. (court use only) _S1-411-18_

In the Justice Court, Precinct _1_ , _Gregg_ County, Texas

2018 SEP 27 PM 2:22

JUSTICE OF THE PEACE
PRECINCT 1

PLAINTIFF _Andy L Smith_

VS.
DEFENDANT(S): _Cathy Baxter_

Defendant(s) Address: _4501 McCANN Road, Longview, Tx 75605_

COMPLAINT: The basis for the claim which entitles the plaintiff to seek relief against the defendant is:

_SEE Attachment sheets with pages 1 through_

RELIEF: Plaintiff seeks damages in the amount of $ _10,000.00_ , and/or return of personal property as described as follows
(be specific): _____ , which has a value of $ _____

Additionally, plaintiff seeks the following: _That the court file criminal charges against the defendant for providing a faste false statement on a federal document._

SERVICE OF CITATION: Service is requested on defendants by personal service at home or work or by alternative service as allowed by the Texas Justice Court Rules of Court. Other addresses where the defendant(s) may be served are:

_4501 McCANN Road, Longview Texas 75605_

☐ If you wish to give your consent for the answer and any other motions or pleadings to be sent to your email address, please check this box, and provide your valid email address: _____

_Andy L. Smith_
Petitioner's Printed Name

Signature of Plaintiff or Attorney

_10915 Fm 16 East_
Address of Plaintiff's Attorney, if any, or Plaintiff if none

DEFENDANT(S) INFORMATION (if known):
DATE OF BIRTH: _____

LAST 3 NUMBERS OF DRIVER LICENSE: _____

LAST 3 NUMBERS OF SOCIAL SECURITY: _____

DEFENDANT'S PHONE NUMBER _____

_Tyler_        _Texas_        _75706_
City               State               Zip

_903-279-3975_

Phone & Fax No. of Plaintiff's Attorney, if any, or Plaintiff if none

# JUSTICE COURT CIVIL CASE INFORMATION SHEET (4 13)

CAUSE NUMBER *(FOR CLERK USE ONLY):* ___SI-411-18___

STYLED ___Andy L. Smith V. Cathy Baxter___
(e.g., John Smith v. All American Insurance Co; In re Mary Ann Jones; In the Matter of the Estate of George Jackson)

FILED
2018 SEP 27 PM 2: 28

A civil case information sheet must be completed and submitted when an original petition is filed to initiate a new suit. The information should be the best available at the time of filing. This sheet, required by Rule of Civil Procedure 502, is intended to collect information that will be used for statistical purposes only. It neither replaces nor supplements the filings or service of pleading or other documents as required by law or rule. The sheet does not constitute a discovery request, response, or supplementation, and it is not admissible at trial.

| 1. Contact information for person completing case information sheet: | | 2. Names of parties in case: |
|---|---|---|
| Name: Andy L. Smith . | Telephone: 9032793975 | Plaintiff(s): Andy L. Smith |
| Address: 10915 Fm 16 East | Fax: | |
| City State Zip: Tyler, Tx 75706 | State Bar No: | Defendant(s): Cathy Baxter |
| Email: | | |
| Signature: | | [Attach additional page as necessary to list all parties] |

## 3. Indicate case type, or identify the most important issue in the case *(select only 1):*

☐ **Debt Claim:** A debt claim case is a lawsuit brought to recover a debt by an assignee of a claim, a debt collector or collection agency, a financial institution, or a person or entity primarily engaged in the business of lending money at interest. The claim can be for no more than $10,000, excluding statutory interest and court costs but including attorney fees, if any.

☐ **Eviction:** An eviction case is a lawsuit brought to recover possession of real property, often by a landlord against a tenant. A claim for rent may be joined with an eviction case if the amount of rent due and unpaid is not more than $10,000, excluding statutory interest and court costs but including attorney fees, if any.

☐ **Repair and Remedy:** A repair and remedy case is a lawsuit filed by a residential tenant under Chapter 92, Subchapter B of the Texas Property Code to enforce the landlord's duty to repair or remedy a condition materially affecting the physical health or safety of an ordinary tenant. The relief sought can be for no more than $10,000, excluding statutory interest and court costs but including attorney fees, if any.

☑ **Small Claims:** A small claims case is a lawsuit brought for the recovery of money damages, civil penalties, personal property, or other relief allowed by law. The claim can be for no more than $10,000, excluding statutory interest and court costs but including attorney fees, if any.

Instructions: The Servicemembers Civil Relief Act applies to a civil proceeding in the Justice Courts. Before entering a default judgment against an individual defendant, the plaintiff must file with the court an affidavit stating whether or not the defendant is in the military service, showing necessary facts to support the affidavit, or stating that the plaintiff is unable to determine whether or not the defendant is in military service, if that is the case. The requirement for an affidavit may be satisfied by a written, signed document declared to be true under penalty of perjury. If it appears that the defendant is in military service, the court may not enter a judgment until after the court appoints an attorney to represent the defendant. If the court is unable to determine if the defendant is in military service, the court may require plaintiff to file a bond in an amount approved by the court. A person who makes or uses an affidavit under this Act knowing it to be false, may be fined or imprisoned or both. 50 U.S.C. App. 501 et seq. To obtain certificates of service or non-service under the Servicemembers Civil Relief Act, you may access the public website: https://sera.dmdc.osd.mil/scra/#/home. This website will provide the current active military status of an individual.

CAUSE NO. ___51-411-18___

___Andy L. Smith___
Plaintiff

§ In the Justice Court of

vs.

§ Gregg County, Texas

___Cuthy Baxter___
Defendant

§ Precinct

Before me, on this day personally appeared, _____

Who, under penalty of perjury, stated that the following facts are true:

I am the ☐Plaintiff ☐attorney of record for the Plaintiff in this proceeding.

## MILITARY STATUS AFFIDAVIT
## SERVICEMEMBERS CIVIL RELIEF ACT SEC. 201(b)

Plaintiff being duly sworn on his oath deposes* and says that defendant is (are): (Check One)

(✓) not in the military
( ) not on active duty in the military and or
( ) not in a foreign country on military service
( ) on active military duty and or is subject to the Service Members Relief Act of 2003
( ) defendant has waived his/her rights under the Service Members Relief Act of 2003
(✓) Military status is unknown at this time

I know this status because:

_____          ___9/27/2018___
PLAINTIFF                                      DATE

Sworn to and subscribed before me on this the __27__ day of __September__ 20 __18__

_____    OR    _____
Notary of Public, State of Texas          Clerk of Court

*Penalty for making or using false affidavit - A person who makes or uses an affidavit knowing to be false, shall be fined as provided in Title 18 United States Code, or imprisoned for not more than one year or both.

FILED

2018 SEP 27 PM 2: 24

JUSTICE OF THE PEACE
PRECINCT 1



ANDY SMITH,

     Plaintiff

September 25, 2018

v.

Cathy Baxter,

     Defendant

## CAUSE OF ACTION

## A. The Equal Pay Act of 1963

1. The Plaintiff Andy Smith claim his rights under the Equal Pay Act of 1963 were violated and he was retaliated against because he complained about discrimination, filed a charge of discrimination, or participated in an employment discrimination investigation or lawsuit with the United States Merit System Protection Board under MSPB Case Number: DA-3330-17-0276-I-1. **See Exhibit A.**

2. The Plaintiff Andy Smith also claim his rights under the Equal Pay Act of 1963 were violated and he was retaliated against because he complained about discrimination, filed a charge of discrimination, or participated in an employment discrimination investigation or lawsuit, when Manager Cathy Baxter signed and submitted a false Statement in her Notice of Proposed Removal, that Mr. Stephens also underwent a polygraph examination at the Longview Police Department. According to the polygraph examiner Sanford was being truthful when he stated you deliberately spit in his face. See **Exhibit B.**

3. The Plaintiff Andy Smith further claim his rights under the Equal Pay Act of 1963 were violated and he was retaliated against because he complained about discrimination, filed a charge of discrimination, or participated in an employment discrimination investigation or lawsuit, when Manager Cathy Baxter signed and submitted a false statement in her Notice of Proposed Removal, the Postal Inspectors sent the saliva for DNA testing. The Joint Contract Interpretation Manual May 2017 state that the Role of Inspection Service, The Postal Inspection Service has an obligation to comply fully with the Letter and spirit of the National Agreement and may not interfere in the dispute resolution process as it relates to Article 15 and Article 16. See **Exhibit C.**

4. The Plaintiff Andy Smith therefore claim his rights under the Equal Pay Act of 1963 were violated and he was retaliated against because he complained about discrimination, filed a charge of

2

discrimination, or participated in an employment discrimination investigation or lawsuit, when Manager Cathy Baxter signed and submitted a false statement in her Notice of Proposed Removal, she state that the Plaintiff became angry and raised his voice, after which Mr. Stephens began to exit the room, you then walked in front of him and opened the door, while Stephens was passing through the door, he felt you breathe and spit on his face. Yet, in the Police Report number 18-1254 by Police Officer Cedric Davis stated, Sanford Stephens said, after the meeting, he was about to exit the building with Andy walking in front of him, Stanford advised that Andy turned around and intentionally spit on his (Stanford) face.

5. The Plaintiff Andy Smith finally claim that he personally went to the Longview Texas Police Department and talked to Police Officer Howell. That the Longview Police Department Officer Howell and another Officer in sequence number 182680437 informed me that the Longview Police Department does not polygraph at the Department and would not for a Class C Misdemeanor. That Longview Police Department did not send spit off for DNA examination for Police Report 18-1254.

**Element 1:**

Sanford Stephens signed and provided me the Plaintiff Andy Smith a letter of Emergency Placement in accordance with Article 16.7 of the National Agreement. **See Exhibit D.**

3

### Element 2:

The Defendant Cathy Baxter signed and submitted a false
statement on September 21, 2018 that Mr. Stephens underwent a
polygraph examination at the Longview Police Department. That
according to the polygraph examiner Sanford Stephens was being
truthful when he stated you deliberately spit in his face.
**See Exhibit B.**

### Element 3

The Defendant Cathy Baxter signed and submitted a false
statement that the Postal Service Inspectors sent the saliva for
DNA testing. **See Exhibit B.**

## B. The Equal Pay Act of 1963

6. Plaintiff alleges that the Defendant Cathy Baxter signed and
submitted a written statement that the Defendant knew was a
false statement.

7. Plaintiff re-alleges and incorporates the allegations contained
in the above paragraphs as if fully stated herein.

4

8. As described above, Defendant's action constitue retaliation
and discrimination under the Equal Pay Act of 1963.

FILED
SEP 27  PM 2:24

JUSTICE OF THE PEACE
PRECINCT 1

9. As a result of Defendant's retaliation and discrimination, the
Plaintiff has suffered and expects to suffer pecuniary losses,
including but not limited to, lost wages and other benefits
associated with his employment.

10. Additionally, Plaintiff seeks any and all equitable relief
neccessary to retain him to the position that he would have been
in but for the Defendant's retaliation and discrimination.

11. As a result of Defendant's retaliation and discrimination,
Plaintiff has suffered non-pecuniary losses, including but not
limited to, emotional pain, suffering, inconvenience, personal
humilation, mental anguish, loss of employment of life, and other
non-pecuniary damages.

## JURY DEMAND

Plaintiff hereby makes a demand for a trial by jury on all issues,
claims and defense in this action.

## PRAYER

Wherefore, Plaintiff respectfully request that the above named
Defendant, be cited to appear in this matter and that, after jury
trial by proof, the plaintiff be awarded 2 months of pay.

A. Any and all lost wages, salary and other employment benefits
of monetary values lost.

B. 10, 000.00 dollars for 2 months of wages, salary and other
employment benefits of monetary values lost.

Andy L. Smith, Pro Se
10915 FM 16 East
Tyler, Texas 75706
(903) 279-3975

*Exhibit A*

FILED

2018 SEP 27 PM 2: 24

JUSTICE OF THE PEACE
PRECINCT 1

# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD
### DALLAS REGIONAL OFFICE

ANDY L. SMITH,

        Appellant,

    v.

UNITED STATES POSTAL SERVICE,

    Agency.

DOCKET NUMBER
DA-3330-17-0276-I-1

DATE: January 30, 2018

<u>Andy L. Smith</u>, Tyler, Texas, pro se.

<u>Nadalynn F. Hamilton</u>, Esquire, Dallas, Texas, for the agency.

**BEFORE**
Theresa J. Chung
Administrative Judge

## INITIAL DECISION

### INTRODUCTION

On April 12, 2017, the appellant timely filed this appeal alleging the agency violated his veteran's preference rights under the Veterans Employment Opportunities Act of 1998 (VEOA) with regard to his position as a Laborer Custodian. Initial Appeal File (IAF), Tab 1. I find the Board has jurisdiction over this appeal pursuant to VEOA. A hearing was conducted on December 4, 2017, and the record closed after the hearing. IAF, Tab 39. For the reasons set forth below, the appellant's request for corrective action is DENIED.

The appellant testified Toliver retaliated against him by making him work more hours, and that managers bully him and others as military veterans. He stated, "it's worse than sexual harassment," and "its constant retaliation." *Id.* He noted that employees file equal employment opportunity (EEO) complaints and National Labor Relations Board (NLRB) complaints, but management lies or retaliates against them in response. *Id.*

## USERRA

Pursuant to the USERRA legislation, the Board has appellate jurisdiction over appeals from any person alleging discrimination in Federal employment on account of prior military service. *See* 38 U.S.C. §§ 4303(4)(A)(ii), 4311(a), 4324(b). To establish Board jurisdiction under USERRA, there are three requirements: (1) performance of duty in a uniformed service of the United States; (2) denial of a "benefit of employment" as described at 38 U.S.C. § 4311(a); and (3) nonfrivolous allegations that the benefit was lost due to the performance of duty in the uniformed service. *Yates v. Merit Systems Protection Board*, 145 F.3d 1480, 1484-85 (Fed. Cir. 1998); *Clavin v. U.S. Postal Service*, 99 M.S.P.R. 619, ¶ 6 (2005). The statute provides that "an employer shall be considered to have engaged in actions prohibited [by USERRA] if the person's . . . service . . . in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such . . . service." 38 U.S.C. § 4311(c); *Yates*, 145 F.3d at 1483; *Fahrenbacher v. Department of the Navy*, 85 M.S.P.R. 500, 509 (2000), *aff'd sub nom. Sheehan v. Department of the Navy*, 240 F.3d 1009 (Fed. Cir. 2001). The appellant made a non-frivolous allegation of USERRA jurisdiction, and, accordingly, a hearing was conducted.

The appellant's claim is the type of USERRA discrimination case that involves an alleged violation of 38 U.S.C. § 4311(a). That statute provides as follows:

*Andy Smith*

A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

*See also Swidecki v. Department of Commerce*, 113 M.S.P.R. 168, ¶ 5 (2010).

The appellant bears the initial burden of showing, by preponderant evidence, that his military status or service was "a substantial or motivating factor" in the agency's action. *See Sheehan*, 240 F.3d at 1013. A substantial or motivating factor is a factor that, although not necessarily the main cause, played a part in producing the particular result. *Id.* Uniformed service is a motivating factor if an agency relied on, took into account, considered, or conditioned its decision to act or not act on an appellant's military-related absence or obligation. *See Erickson v. U.S. Postal Service*, 571 F.3d 1364, 1368 (Fed. Cir. 2009). If the appellant successfully makes such a showing, the burden shifts to the agency to prove by preponderant evidence that it would have taken the same action for a valid reason, unrelated to the appellant's veteran status. *Sheehan*, 240 F.3d at 1013-14.

Discriminatory motivation under USERRA may be established by direct evidence or reasonably inferred from a variety of factors. *See Brasch v. Department of Transportation*, 101 M.S.P.R. 145, ¶ 9 (2006). These factors include proximity in time between the employee's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by USERRA together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses. *Id.*, ¶ 9.

An essential element of a USERRA discrimination claim is that the contested agency decision was based on an improper motivation. *Clavin*, 99

*Andy Smith*

M.S.P.R. 619, ¶ 6. The Board's proper role in a USERRA case "is not to determine whether the appellant should have been selected for the position in question instead of being passed over, but to determine whether the agency's decision to pass over him was based on discrimination because of the appellant's military service." *Fedder v. Department of the Interior*, 103 M.S.P.R. 221, ¶ 8 (2006).

The appellant has failed to prove, by preponderant evidence, that his military status or service was "a substantial or motivating factor" in the agency's actions with regard to hours of his position.

I discern no basis to conclude that the appellant's military service or status was a substantial or motivating factor in the agency's action with regard to the hours of his position. At hearing, Toliver testified the appellant occupies a part-time regular position in the Downtown Longview, Texas station, for 28 hours per week. IAF, HCD. She explained she was responsible for posting the position. She testified that, when there is a new position, the agency posts a Notice of Intent form, and the employees have ten days to bid for the position. She testified the Notice of Intent form for the appellant's position identified the 28-hour-per-week schedule for the Laborer Custodial position: Monday, from 6-2:30 pm, and Tuesday through Friday, from 6-11 am. She testified the duties of the position involve cleaning the line, parking lot, and outside areas; trimming hedges and trees; cleaning interior bathrooms, floors, and the lobby area. She noted the bidding was open from November 13, 2015 through November 20, 2015, as reflected on the Notice of Intent form. She testified the appellant submitted a hard copy bid form, which contained the same Job ID number (70679221) as set forth in the Notice of Intent form. *See* Tab 33 at 2. She noted that custodians bid on a manual form, and not on a computer, and that Human Resources instructed her on the bidding process. She testified it appeared that the form the appellant used was an older form, and she was not sure where the

Andy Smith

appellant got the form. As a result of the appellant's bid, Toliver stated that she posted an award letter, notifying employees the appellant was the successful bidder, effective November 28, 2015, and noting the schedule of the position. She testified the award letter reflects that the hours of the position would be 28-hours per week, or Monday, from 6-2:30 pm, and Tuesday through Friday, from 6-11 am.

Toliver acknowledged the appellant's written bid form reflected the hours of the position were 6-2:50, and that these hours were greater than the hours posted on the Notice of Intent. IAF, HCD. However, she stated the appellant's bid form clearly identified the position for which he was bidding. Further, she testified she asked the appellant why he bid for a 28-hour position from a 40-hour position, and he mentioned wanting to spend more time with his kids. She noted he was the only individual who bid for the position.

Toliver further testified external candidates cannot apply for the first round of bids, and military status is not a factor in the bid process, which is prioritized by seniority within the specific agency installation. She testified she knew of no reason why the position should have been more than 28-hours-per-week. She noted that she was not involved in a settlement agreement with the union, and she was unaware of whether acting Station Manager Moore entered into any such agreement.

When questioned, Toliver acknowledged her signature is on a General Notice, dated June 6, 2014, reflecting the Longview Downtown Custodian position was being reverted, effective June 6, 2015. IAF, Tab 33 at 3 (Exhibit C).[6] Toliver explained that a reversion means the position was eliminated. IAF, HCD. Toliver stated she was on detail at the time, and not the Longview Postmaster, and that she did not recall signing the document. She noted,

---

[6] At hearing, the appellant tendered Exhibits A through H. IAF, Tab 33. Those documents are admitted into the record.

*Andy Smith*

however, that an individual named McCain had held the Longview Downtown custodial position, and that his position was being abolished and his hours were restructured among the Longview stations to meet the agency's needs. Further, she stated that acting Station Manager Moore never gave her a copy of the union grievance regarding the hours of the Laborer Custodian position. IAF, Tab 33 at 4 (Exhibit D). She testified she was unaware of the Grievance Settlement, signed by Moore on August 7, 2015, in which the agency agreed to repost the Laborer Custodial position for Longview Downtown. *Id.* at 5 (Exhibit E). It appears the Grievance Settlement resulted from a union grievance. *Id.* at 5.

Toliver also testified that, although the appellant typically works 28 hours per week, management can require him to work more than 28 hours. IAF, HCD. She noted that, under a prior agreement with the union, the agency must provide a certain number of custodial hours (specified in Line H on the 4582 form), and, if they do not, the union can file a grievance. *Id.* According to a Memorandum of Understanding, managers can work certain employees over their scheduled hours to meet the "Line H hours." *Id.*

Toliver lacked any indication of animus towards the appellant based on his military service or status. She stated that she believes the appellant is a veteran, but she has never seen documentation of his veteran's preference status. She stated he has requested Wounded Warrior leave, but she is not familiar with the exact circumstances. She denied having specific knowledge of his grievances or his complaints. She noted that she manages three offices, works in a different office from the appellant, and she supervises managers who have direct supervision of employees.[7] She stated she was unaware of whether the appellant filed a Board appeal regarding the denial of his Wounded Warrior leave. She

---

[7] She identified supervisors Stanley O'Quinn, Daphne Moore, and Johnny Wright as supervisors under her management. None of these managers testified at hearing, and the appellant did not request them as witnesses. IAF, Tab 27 at 12-16; IAF, Tab 30.

*Andy Smith*

stated his military status had no role in the bidding process, or her creation of the position. She explained the hours she set for the position, noting that she scheduled more hours on Monday and fewer hours the following days, based on her assessment of the needs of that office. Based on the entirety of her testimony, there is no indication that she had any reason to discriminate against the appellant based on his military duty. *Id.*

At hearing, Maxine Lee, District Compliment Coordinator, testified. IAF, HCD. She stated that she oversees the bidding process for custodial employees, and the Postmaster decides who receives the bid based on seniority. She noted there are three different types of seniority, but military service is not a factor. She verified and validated the documentation used by Toliver for bidding for the appellant's position. Further, she testified that, due to past grievances, management is required to fill "Line H hours" as set forth in the Form 4852. She stated that does not deal with the grievance processes, and that she was not specifically involved in creating the Form 4852 or Staffing Packet for the Laborer Custodial position.

The appellant generally asserted that he, and other qualified veterans, were subjected to unfavorable treatment as a result of their military experience or status. IAF, HCD. He noted that he has received disciplinary action for being six minutes late, and that Toliver has denied him Wounded Warrior leave. Further, he testified Toliver has harassed other military veterans.

At hearing, Foster Forde, an electronic technician and Maintenance Craft Director for DFW Local, testified that Form 4582 is a staffing document used to determine the number of custodians for a facility. IAF, HCD. He noted that posting the position as 28-hours-per-week, when it is supposed to be 32-hours-per-week could be a violation of the collective bargaining agreement (CBA). Further, he stated management has a right to revert or abolish a position, but the union can challenge it under the CBA. He testified the agency appears to have posted the appellant's position as 28 hours per week, and this appears to violate

*Andy Smith*

the settlement agreement between the union and management. Further, he stated employees should only work mandatory overtime in an emergency. He acknowledged that, based on a national MOU with the union, custodians cannot work less than 90% of the hours posted in Column H of the 4852 form. He noted the CBA allows managers to use other employees to cover an absence, and they cannot force individuals to work overtime.

I note that several individuals testified at hearing that Toliver and Post Office Manager Johnny Wright were arbitrary and unfair, and that they subjected complainers to more harsh treatment. At hearing, Stephen Lawrence, Lead Sales Service Associate and union steward, testified Wright "does not acknowledge veterans the way they would like" and "does not afford them the respect they deserve." IAF, HCD. Lawrence testified he is not a veteran, but he has heard that other veterans have been denied leave and treated unfairly. Lawrence testified Longview does not adhere to rules and operates differently from other areas. He testified that Wright is "intimidating and overbearing." He further testified that supervisor Pam Jackson has "mood swings," and is "unpredictable and confrontational." Lawrence testified an individual named Gerald Hawkins told Lawrence, "I could kill [the appellant]." He stated that an individual with the last name Brown is "very short" and argumentative. Lawrence confirmed O'Quinn issued a letter of warning to the appellant for being six minutes late. He stated he heard from someone that Pam Jackson denied the appellant Wounded Warrior leave to attend an appointment. Lawrence stated Longview management retaliates and harasses the appellant, but he can't say it's across the board with regard to all of his duties. Lawrence confirmed bids are awarded based on seniority, and that military service is not a factor. Lawrence further stated the Laborer Custodial position is supposed to be a 32-hour-a-week positon, but they are holding the appellant to 28 hours. He stated he is unaware of the reason for this, and is not sure if it was due to the appellant's veteran status.

*Andy Smith*

Rodney Mathis testified that he was previously a Longview Downtown custodian, and that the agency never denied his request to attend medical appointments at the Department of Veterans Affairs (VA). IAF, HCD. He stated that he made his requests to a manager named Sherry (and not Wright), who approved them. He stated Wright retaliates against employees who file grievances, and that "whatever [Wright] says, goes."

John Harris, a window clerk at the Longview Main Post Office, testified that he is a veteran. IAF, HCD. Harris testified that Longview management does not follow the contract and "talks down" to people. Wright harasses veterans and does not respect them. Further, Toliver retaliated against Harris for filing a complaint. He also stated he has been denied leave, and the agency does not post USERRA rights for veterans. He stated Longview managers have harassed and retaliated against him.

Cusundia Brigham, Clerk, Longview Downtown station, testified that she is not a veteran, but she believes Wright is "aggressive, belligerent, and impolite." IAF, HCD. She described Toliver as "abrupt and aggressive." She stated she has filed EEO and NLRB complaints, and she has received a letter of warning or suspension for being late. She stated she has been harassed and retaliated against for filing complaints, and that she has witnessed harassment and retaliation toward the appellant. She has seen the letter of warning the appellant received for being late six minutes. Toliver has denied her medical leave without good reason and has also threatened her "to work until the mail gets out." Many employees fear retaliation. She does not believe military veterans are treated fairly.

I have carefully considered all hearing testimony and record evidence. I find the appellant has failed to meet his burden of proof to show that his prior uniformed service or reserve status was a motivating or substantial factor in the agency's action. As an initial matter, there is no indication his military activity

was close in time to the adverse employment action.[8] Further, the appellant failed to identify any statement made by an agency official that reflected a discriminatory attitude directly related to any of the matters in dispute. The agency's explanation of the bidding process and the overtime hours for his position were consistent. I found Toliver and Lee to be credible witnesses based on their straightforward testimony and my assessment of their demeanor. *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987). Further, there is no indirect evidence of discrimination because the appellant did not identify a similarly-situated individual without prior military service who was treated less harshly than, or differently from, him. While it is clear there was discord between managers and many employees, there is no indication the agency failed to comply with the union agreement due to the appellant's military service. There is no indication his military status had any role in the actions the appellant challenges in this appeal. Beyond bare speculation, there is no evidence linking the appellant's military service to the agency's initial posting of his position or the determination of his work hours. I find the appellant has not demonstrated the agency had a general animus against persons who performed military service or that it was motivated to act against him specifically because of his military status. *Daniels v. U.S. Postal Service*, 88 M.S.P.R. 630, 632 (2001), *aff'd*, 25 F. App'x 970 (Fed. Cir 2001). I find the appellant has failed to carry his burden of demonstrating that he was discriminated against based on his military service or status as a veteran. *See Sheehan*, 240 F.3d at 1014-15.

---

[8] It is undisputed the appellant is a veteran with a service-connected disability, but there is no indication in this appeal record as to when his military service occurred. It appears his service concluded in 2005. *See Smith v. U.S. Postal Service*, 540 F.3d 1364, 1365 (2008).

*Andy Smith*

## The appellant did not prove USERRA retaliation.

With respect to retaliation claims, USERRA provides as follows:

> An employer may not discriminate in employment against or take any adverse employment action against any person because such person (1) has taken an action to enforce a protection afforded any person under this chapter, (2) has testified or otherwise made a statement in or in connection with any proceeding under this chapter, (3) has assisted or otherwise participated in an investigation under this chapter, or (4) has exercised a right provided for in this chapter.

38 U.S.C. § 4311(b). In other words, if an appellant engages in one or more forms of protected activity, described above, an agency violates section 4311(b) if the appellant's protected activity "is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such person's [protected activity]." 38 U.S.C. § 4311(c)(2); *Burroughs v. Department of the Army*, 120 M.S.P.R. 392, ¶ 7 (2013). The appellant may establish his claim that the agency's action was motivated by retaliatory motive or intent through either direct or circumstantial evidence such as an agency's expressed hostility towards members protected by the statute, together with knowledge of the appellant's protected activity under USERRA, and disparate treatment of certain employees compared to other employees with similar work or offenses. *Brasch*, 101 M.S.P.R. 145, ¶ 9.

In other words, if an appellant engages in one or more forms of protected activity, described above, an agency violates section 4311(b) if the appellant's protected activity "is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such person's [protected activity]." 38 U.S.C. § 4311(c)(2); *Burroughs*, 120 M.S.P.R. 392, ¶ 7. The appellant may establish his claim that the agency's action was motivated by retaliatory motive or intent through either direct or circumstantial evidence such as an agency's expressed hostility towards members protected by the statute, together with knowledge of the appellant's protected activity under

*Andy Smith*

*Exhibit 4* FILED 15

USERRA, and disparate treatment of certain employees compared to other employees with similar work or offenses. *Brasch*, 101 M.S.P.R. 145, ¶ 9.

As an initial matter, it is not clear the appellant has established he has engaged in protected activity as set forth in 38 U.S.C. § 4311(b). The appellant submitted a list of his prior complaints: (1) Board appeal, DA-3330-17-0204-I-1 regarding the denial of leave to attend a VA appointment[9]; (2) Board appeal DA-3330-17-0276-I-1[10]; (3) representing Donald White in DA-3330-17-0006-I-1[11]; (4) filing an Office of Special Counsel (OSC) complaint regarding nepotism in hiring of Laborer Custodian and denial of veteran's preference; (5) OSHA complaint regarding unsafe hazards and practices; (6) whistleblower complaint due to threats; (7) local grievance 052215VC regarding harassment when ordered to pressure wash walls in a building constructed with asbestos; and (8) local grievance 081115AS. IAF, Tab 4 at 2-4. The records submitted by the appellant reflect that his grievances involved managers other than Postmaster Toliver, and they did not involve claims of military status discrimination under USERRA. *Id.* at 7-14. Further, the record reflects that his prior Board appeals, as well as White's Board appeal, involved claims under VEOA, and not USERRA.[12] IAF, Tab 27 at 22.

---

[9] This appeal involved a claim the agency violated the appellant's VEOA rights by denying his request to attend a VA medical appointment; the appeal was settled by the parties. IAF, Tab 27 at 22.

[10] This appeal is pending before me.

[11] White's appeal involved claims the agency violated VEOA when it did not select him for two custodian positions. The appellant represented White in his appeal.

[12] The appellant submitted an Order, dated December 27, 2006, referencing a USERRA complaint the appellant filed with OSC. IAF, Tab 27 at 19 (Docket No. DA-3330-17-0204-I-1). He also submitted part of an Initial Decision, reversing the agency's action in an appeal alleging he was subject to a reduction in force. *Id.* at 21 (Docket No. DA-0351-13-0595-I-1).

*Andy Smith*

Even assuming the appellant's prior Board appeals or other complaint activity is protected activity as set forth in 38 U.S.C. § 4311(b), there is no indication that any of his prior cases was a motivating factor in the agency's bidding process. *Burroughs*, 120 M.S.P.R. 392, ¶ 7. In this appeal, as referenced above, there was no direct evidence of agency hostility toward members of the uniformed services. *Brasch*, 101 M.S.P.R. 145, ¶ 9. Moreover, the preponderant evidence did not suggest disparate treatment. In addition, Toliver's testimony was consistent with the documentary evidence and the testimony of Lee. Accordingly, I find that the appellant did not prove retaliation by preponderant evidence.[13] *Burroughs*, 120 M.S.P.R. 392, ¶ 7; *Brasch*, 101 M.S.P.R. 145, ¶ 9.

Insofar as the appellant contends he was treated more harshly than other complainants due to his military status, there is no evidence to support this conclusion. *See* IAF, Tab 16 at 2 (Appellant states, "I was being retaliated against because of my whistleblower complaint due to my status as a veteran under USERRA."). Even if managers treated complainers more harshly after raising complaints, which I need not decide here, the appellant failed to show this treatment was due to the complainer's military status. Beyond bare speculation, there is no evidence linking the appellant's prior complaints to the agency's initial posting of his position or the determination of his work hours. Even if the agency failed to comply with a union agreement, so long as it is not rooted in

---

[13] Insofar as the appellant is raising a hostile work environment claim under USERRA, he has not shown by preponderant evidence that he was subject to a pattern of ongoing and persistent harassing behavior based on his military service that was sufficiently severe or pervasive to alter the terms and conditions of employment. *See* 38 U.S.C. § 4311(a); *Kitlinski v. Department of Justice*, 123 M.S.P.R. 41, ¶ 19 (2015), *affirming in part, vacating in part, Kitlinski v. Merit Systems Protection Board*, 857 F.3d 1374 (2017). He has not established that there is some connection between the alleged acts of hostility and his protected military status. *See Kitlinski*, 123 M.S.P.R. 41, ¶ 20; 5 C.F.R. § 1201.57(c)(4).

AndySmith

FILED

discrimination based on his veteran status, the Board cannot intervene in the agency's decision in a USERRA appeal.[14]

JUSTICE OF THE PEACE

Finally, the appellant has raised allegations of labor violations, prohibited personnel practices, discrimination, and retaliation in his appeal. IAF, Tabs 4 and 17. However, the Board does not have jurisdiction over all actions that are alleged to be incorrect. *See Weyman v. Department of Justice*, 58 M.S.P.R. 509, 512 (1993). The Board lacks jurisdiction over the appellant's claims of prohibited personnel actions, discrimination, and EEO retaliation absent an otherwise appealable action.[15] *Wren v. Department of the Army*, 2 M.S.P.R. 1, 2 (1980) (finding that a prohibited personnel practice under 5 U.S.C. § 2302(b) is not an independent source of Board jurisdiction), *aff'd*, 681 F.2d 867 (D.C. Cir. 1982); *Davis v. Department of Defense*, 105 M.S.P.R. 604, ¶ 16 (2007) (finding that the Board could not consider the appellant's prohibited personnel practice claims in a VEOA and USERRA appeal in which he did not raise an otherwise appealable action); *Dale v. Department of Veterans Affairs*, 102 M.S.P.R. 646, ¶ 18 (2006) (finding that the Board lacks jurisdiction to decide claims of discrimination based on disability, sex, and age in a pure VEOA or USERRA case).

---

[14] The appellant may be able to pursue his claims regarding non-compliance with union agreements through the agency's internal grievance process or through the Federal Labor Relations Authority.

[15] Postal Service employees may not seek corrective action under the Whistleblower Protection Act through an individual right of action appeal. *See Whisnant v. U.S. Postal Service*, 83 M.S.P.R. 588, 589-90 (1999); 5 U.S.C. § 2302(a)(2)(C); *Matthews v. U.S. Postal Service*, 93 M.S.P.R. 109, ¶ 13 (2002).

*Andy Smith*

*Exhibit A*

FILED

## DECISION

The appellant's request for corrective action is **DENIED**.

2018 SEP 27 PM 2: 25

JUSTICE OF THE PEACE
PRECINCT 1

FOR THE BOARD:

Theresa J. Chung
Administrative Judge

## NOTICE TO APPELLANT

This initial decision will become final on **March 6, 2018**, unless a petition for review is filed by that date. This is an important date because it is usually the last day on which you can file a petition for review with the Board. However, if you prove that you received this initial decision more than 5 days after the date of issuance, you may file a petition for review within 30 days after the date you actually receive the initial decision. If you are represented, the 30-day period begins to run upon either your receipt of the initial decision or its receipt by your representative, whichever comes first. You must establish the date on which you or your representative received it. The date on which the initial decision becomes final also controls when you can file a petition for review with one of the authorities discussed in the "Notice of Appeal Rights" section, below. The paragraphs that follow tell you how and when to file with the Board or one of those authorities. These instructions are important because if you wish to file a petition, you must file it within the proper time period.

## BOARD REVIEW

You may request Board review of this initial decision by filing a petition for review.

If the other party has already filed a timely petition for review, you may file a cross petition for review. Your petition or cross petition for review must state your objections to the initial decision, supported by references to applicable laws, regulations, and the record. You must file it with:

Andy Smith

*Exhibit B* FILED



**UNITED STATES
POSTAL SERVICE**

REF:SWA:DD:HR:LR:C.Baxter:gj:75099-9401

2018 SEP 27 PM 2: 25

JUSTICE OF THE PEACE
PRECINCT 1

September 21, 2018

**Notice of Proposed Removal**

Andy L Smith
EID: 02101524
10915 FM 16 E
Tyler, TX 75706-3065

Delivery Confirmation # 905521649118264168290
Cert #70180680000177423013
Express #EL794844373US

This is advance written notice that it is proposed to remove you from the US Postal Service no sooner than 30 calendar days from your receipt of this notice.

This action is based on the following reason:

**CHARGE:     UNACCEPTABLE CONDUCT**

**Specification: On January 26, 2018 you spat on the face of Supervisor Sanford Stephens at the Longview Downtown Post Office.**

**Background:** On January 26, 2018, you met with Supervisor Sanford Stephens concerning two informal grievances. At the close of the meeting, Stephens issued you a Letter of Warning for Failure to Follow Instructions, which you refused to sign. You became angry and raised your voice, after which Mr. Stephens began to exit the room. You then walked in front of him and opened the door. While Stephens was passing through the door, he felt you breathe and spit on his face. You were immediately placed off the clock.

Following the incident, Mr. Stephens noticed your saliva on his glasses. Postal Inspectors sent the saliva for DNA testing. The testing revealed that the substance on Mr. Stephens' glasses was positive for DNA from a "major male contributor." Mr. Stephens offered a DNA sample and the testing revealed that he was a possible minor contributor. You refused to offer a DNA sample. Postal Inspectors attempted to obtain a statement from you, however you refused to be interviewed.

Mr. Stephens also underwent a polygraph examination at the Longview Police Department. According to the polygraph examiner Sanford was being truthful when he stated you deliberately spit in his face.

On April 10, 2018, an investigative interview was held with you and your representative, Vermon Chatmon. During the interview, you denied the allegation and stated that you no longer remember the details of the incident. I showed you Mr. Stephen's written statement and you responded: "*not accepting his statement.*" When I asked you about the Postal Inspector and a local Sheriff visiting your residence on January 26, 2018 in an attempt to interview you and get your statement, you stated that it is a violation of the contract for Postal Inspectors to visit an employee's home.

In making my proposal, I have considered that you have been a postal employee for 17 years. Your behavior as described above was unacceptable and in violation of Postal Service rules and regulations pertaining to the conduct of Postal Service employees, including the Postal Service's Zero Tolerance Policy. Unwelcome, and threatening physical contact will not be tolerated.

The conduct you are being charged with is serious. Your unacceptable conduct has an adverse impact on Postal Service operations. I have considered that you were aware of the rules with which you are charged. You have provided no reasonable explanation or mitigating factors for your conduct.

Accordingly, I have concluded that removal is appropriate and warranted under the circumstances and that no lesser penalty would sufficiently address the seriousness of your behavior.

Your actions as demonstrated are a violation of Postal Service rules and regulations including, but not limited to the following:

**Employee and Labor Relations Manual**

**660 Conduct**

**665.13 Discharge of Duties**

Employees are expected to discharge their assigned duties conscientiously and effectively.

**665.16 Behavior and Personal Habits**

Employees are expected to conduct themselves during and outside of working hours in a manner which reflects favorably upon the Postal Service. Although it is not the policy of the Postal Service to interfere with the private lives of employees, it does require that postal personnel be honest, reliable, trustworthy, courteous, and of good character and reputation. The Federal Standards of Ethical Conduct referenced in 662.1 also contain regulations governing the off-duty behavior of postal employees. Employees must not engage in criminal, dishonest, notoriously disgraceful, immoral, or other conduct prejudicial to the Postal Service. Conviction for a violation of any criminal statute may be grounds for disciplinary action against an employee, including removal of the employee, in addition to any other penalty imposed pursuant to statute.

**665.3 Cooperation in Investigations**
Employees must cooperate in any postal investigation, including Office of Inspector General investigations.

**665.24 Violent and/or Threatening Behavior**

The Postal Service is committed to the principle that all employees have a basic right to a safe and humane working environment. In order to ensure this right, it is the unequivocal policy of the Postal Service that there must be no tolerance of violence or threats of violence by anyone at any level of the Postal Service. Similarly, there must be no tolerance of harassment, intimidation, threats, or bullying by anyone at any level. Violation of this policy may result in disciplinary action, including removal from the Postal Service.

You and/or your representative may review the material (if any) relied upon to support the reasons for this notice at the Labor Relations Office, 951 W Bethel Rd, Coppell, Texas 75099-

*Exhibit B*

9401, between the hours of 9:00 a.m. and 5:00 p.m. If you do not understand the reasons for this notice, contact the undersigned for further information.

You and/or your representative may answer this notice within ten calendar days from your receipt of this letter, either in person or in writing and/or both before Ms. Amanda Morrell, Manager, Post Office Operations at 951 W Bethel Rd, Coppell, TX 75099. You can contact Ms. Morrell at (972) 393-6630 or (972) 393- 6792 to schedule an appointment. You and/or your representative may also furnish affidavits or other written material to Ms. Morrell within ten calendar days from your receipt of this letter. You will be afforded a reasonable amount of official time for the above purpose if you are otherwise in a duty status. After the expiration of the time limit for reply, all of the facts in your case, including any reply you and/or your representative submit, will be given full consideration before a decision is rendered. You will receive a written decision from Ms. Morrell.

In addition to your right to answer this notice as explained above, you have the right to appeal this proposed action under the grievance arbitration procedure set forth in Article 15 of the National Agreement within fourteen days of your receipt of this notice.

If this action is reversed or modified on appeal, back pay may be allowed, unless the appropriate award or decision specifies otherwise, only if you have made reasonable efforts to obtain alternate employment during the potential back pay period. The documentation, which you must maintain and present to support a back pay claim, is, described in Part 436 of the Employee and Labor Relations Manual.

Cathy Baxter
Manager, Northwest Longview Post Office
4501 McCann Rd
Longview, TX 75605

Cc: Disciplinary File
OPF
Manager

*Exhibit C* FILED

2018 SEP 27 PH 2: 25

JUSTICE OF THE PEACE
PRECINCT 1

The **2017** APWU USPS Joint Contract Interpretation Manual (JCIM) update is provided as a resource for the administration of the National Agreement. Jointly prepared by the , American Postal Workers Union, AFL-CIO, and the United States Postal Service, this manual provides a mutually agreed upon explanation on how to apply the contract to the issues addressed.

When a dispute arises, the parties should first go to the JCIM to determine if the issue in dispute is addressed. If it is, the parties are required to resolve the dispute in accordance with this manual.

The JCIM will continue to be updated with additional material as we continue to narrow our differences and expand our joint understanding of the National Agreement. We encourage you to use the JCIM to ensure contract compliance and to foster more professional working relationships.

**Doug A. Tulino**
**Vice President**
**Labor Relations**
**US Postal Service**

**Mark Dimondstein**
**President**
**American Postal Workers Union,**
**AFL-CIO**

May 31, 2017

Exhibit C

FILED

When arbitration hearings are held at the site where the grievance arose, it is Postal Service policy to stagger the appearance of employee witnesses in order to avoid the need for any waiting time. The consistent practice has been to require employee witnesses to perform work at a location from which they can be readily called when needed to testify.

Conversely, when an arbitration hearing is scheduled at a location away from the site where the grievance arose and reasonable waiting time is necessary, the employee remains on Postal Service time while waiting to testify. Payment is on a no less – no gain basis.

## ARTICLE 15.4.X

### ARBITRATION AWARD

An arbitration award is final and binding. Arbitration is the last step of the grievance-arbitration procedure. Final and binding arbitration is an important concept as it reinforces the finality of the decision.

The decisions of expedited arbitrators are final and binding and they may not be cited as precedent. The issues below are to be decided in expedited arbitration and may be appealed directly to arbitration after the Step 2 decision has been rendered [Step 2. (b)].

## ARTICLE 15.4.Y

### EXPEDITED ARBITRATION

The following subjects are appropriate for expedited arbitration:

1. Individual Overtime Issues
2. Withholding of Step Increases
3. Individual Leave Requests Concerning Annual Leave, Sick Leave, Leave Without Pay, Court Leave, Restricted Sick Leave, and Requests for Medical Certification
4. AWOL
5. Individual Holiday Scheduling Issues
6. Suspensions (Except Emergency Suspensions)
7. Article 25, Higher Level Assignments
8. Employee Claims (Article 27)
9. Letters of Demand of Less Than $2,000
10. Individual Clerk Craft Seniority Disputes
11. Such Other Matters as are Mutually Agreeable at the Area/Regional Level

The above does not change either party's right to refer an expedited case to regular arbitration in accordance with the applicable procedures of Article 15.5.C.

### APPOINTMENT OF ARBITRATORS

The appointment of arbitrators to serve on the various panels is administered at the national level. Each district has arbitration panels. Arbitration scheduling is done at the appropriate grievance/arbitration processing center on a first in, first out basis.

---

### INTERVENTION

This provision gives a postal union the right to intervene in arbitration proceedings held pursuant to another collective bargaining agreement if the union believes their interests may be affected.

### PROCESSING OF POST-REMOVAL GRIEVANCES

The processing and/or arbitration of a non-disciplinary grievance is not barred by the final disposition of the removal of the grievant, if that grievance is not related to the removal action and provided the grievance was filed prior to the employee's removal.

### PROCESSING OF GRIEVANCES AFTER SEPARATION

The processing and/or arbitration of a grievance is not barred by the separation of the grievant, whether such separation is by resignation, retirement, or death.

### INTEREST ON BACK PAY

Where an arbitration award specifies that an employee is entitled to back pay in a case involving disciplinary suspension or removal, the Postal Service shall pay interest on such back pay at the Federal Judgment Rate.

### ROLE OF INSPECTION SERVICE

The Postal Inspection Service has an obligation to comply fully with the letter and spirit of the National Agreement and may not interfere in the dispute resolution process as it relates to Articles 15 and 16.

An independent review of the facts by management is required prior to the issuance of disciplinary action, emergency procedures, indefinite suspensions, enforced leave or administrative actions. Management is not precluded or limited from reviewing Inspection Service documents in making a decision to issue discipline.

Inspectors may not make recommendations, provide opinions, or attempt to influence management personnel regarding a particular disciplinary action, as defined above.

### VETERAN'S PREFERENCE

Employees with veteran's preference rights receive both a proposed removal notice and a letter of decision. However, the right of a preference eligible to file a grievance pursuant to Article 15 applies solely to the proposed removal notice. An employee may not file a grievance over a letter of decision.

## ARTICLE 15.5.D.1 and D.4

### NATIONAL LEVEL ARBITRATION

Either party may, at its discretion, advance two cases per craft per calendar year of the cases appealed to arbitration to the head of the arbitration docket. The parties may jointly agree to move additional cases to the top of the docket.

Issues and arguments raised for the first time during national arbitration must be re-discussed at Step 4 to explore the new issue, argument or evidence. The cases re-discussed will remain with the same arbitrator.

LABOR RELATIONS
DALLAS DISTRICT

*Exhibit D*


**UNITED STATES
POSTAL SERVICE**

USPS Tracking # 9114 9011 5981 8738 2976 67
Certified Mail # 7016 2070 0001 0465 7950
Express Mail # EL527955606US

01/26/ 2018

**Emergency Placement**

　Andy Smith (EID 02101524)
　10915 FM 16 E
　Tyler TX 75706-3065

You are hereby notified that you were placed in a non-duty, non-pay status effective today, January 26, 2018. This action was taken in accordance with Article 16.7 of the National Agreement for the following reason:

**There is reason to believe that retaining you on duty might result in you being injurious to yourself or others.**

Specifically today, January 26, 2018 you spat on supervisor Sanford Stephens at the Longview Downtown Post Office. The incident is under investigation now and you will remain in the non-duty/non-pay status until further notice.

You have a right to file a grievance under the grievance/arbitration procedure set forth in Article 15 of the National Agreement within 14 calendar days of your receipt of this letter.

If this action is overturned on appeal, back pay will be allowed, unless otherwise specified in the appropriate award or decision, ONLY IF YOU HAVE MADE REASONABLE EFFORTS TO OBTAIN OTHER EMPLOYMENT DURING THE RELEVANT NON-WORK PERIOD. The extent of documentation necessary to support your back pay claim is explained in the ELM, Section 436.

_Sanl C. Stephens, Supervisor CS._
Name and title.

Cc: Labor Relations
　　File